1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SUSAN ADAMS,                              No.  2:14-cv-0704 AC

12                  Plaintiff,

13        v.                                   ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security of the
15   United States of America,

16                  Defendant.

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act, 42 U.S.C. §§ 42 U.S.C. §§ 401-34, and for Supplemental

21   Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C.

22   §§ 1381-1383f, following a remand from the district court.[1]  For the reasons that follow, the court

23

24   _____
     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
25   who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
26   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
     Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
27   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
     children, whose income and assets fall below specified levels . . .").

28

will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for the calculation and payment of benefits to plaintiff.

## I. PROCEDURAL BACKGROUND

### A. The First ALJ Decision

Plaintiff originally applied for DIB and SSI on September 20, 2007.  Administrative Record ("AR") 101-06 (Exh. 1D), 107-13 (Exh. 2D).[2]  Both applications alleged a disability onset date of April 20, 2007.  AR 101, 107.  The applications were disapproved initially, AR 50 (Exh. 1A), 51 (Exh. 2A), 60-64 (Exh. 1B), and on reconsideration, AR 55 (Exh. 4A), AR 56 (Exh. 5A), 71-77 (Exh. 6B).  Plaintiff thereupon requested a hearing before an administrative law judge ("ALJ"), to challenge the disapproval.  AR 78-79 (Exh. 7B).  On July 15, 2009, ALJ Michael J. Seng presided over the hearing.  AR 547-77 (Exh. 10B) (transcript of hearing).  At this hearing, plaintiff was represented by attorney Richard Grogan.  AR 19.  Plaintiff testified at the hearing.  AR 23-48.

On October 16, 2009, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 499-507 (Exh. 7A) (decision).  On January 14, 2011, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 508-12 (Exh. 8A) (decision and additional exhibit).  On March 16, 2011, plaintiff appealed the ALJ's decision to this court.  AR 513-26 (Exh. 9A); see Adams v. Astrue, Civ. S-11-0731 DAD (TEMP) (E.D. Cal.).

On July 31, 2012, this court found that the ALJ erred by disregarding the July 8, 2009 opinion of Ann Murphy, M.D., plaintiff's treating physician, and the opinion of Billy Wilson, Jr., LMFT, plaintiff's treating therapist.  AR 520.  The court was unable to conclude that the errors were harmless.  AR 521.  Accordingly, the court remanded to the Commissioner under Sentence

---

[2]  The AR is electronically filed at ECF Nos. 12-3 to 12-22 (AR 1 to AR 1,138).

1    Four of 42 U.S.C. § 405(g), "for further development of the record and further findings . . .."

2    AR 521-22.

3        B. <u>The Second ALJ Decision</u>

4        On October 23, 2012, the Appeals Council vacated the October 16, 2009 ALJ decision,

5    and remanded the case to an ALJ "for further proceedings consistent with the order of the court."

6    AR 543-44 (Exh. 10A).  The Council noted that plaintiff had filed subsequent applications for

7    DIB and SSI in April 2011.  AR 543.  It accordingly combined all the claims and ordered the ALJ

8    to consider them all.  AR 543.  On February 7, 2013, ALJ Peter F. Bell held a hearing on

9    plaintiff's combined claims.  AR 460-95 (transcript).  Plaintiff was again represented by attorney

10    Richard Grogan.  AR 460.  Plaintiff testified at the hearing, as did Vocational Expert Joy

11    Yoshiyoko.  AR 462-94.

12        On April 22, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not

13    disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and

14    Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 388-418

15    (decision and exhibits).  On January 14, 2014, the Appeals Council denied plaintiff's request for

16    review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.

17    AR 347-50 (decision).

18        Plaintiff filed this action on March 21, 2014.  ECF No. 1; <u>see</u> 42 U.S.C. §§ 405(g),

19    1383c(3).  In due course, plaintiff was granted leave to proceed in forma pauperis, the parties

20    consented to the jurisdiction of the magistrate judge, the Commissioner answered and filed the

21    administrative record, and the parties filed and fully briefed the pending cross-motions for

22    summary judgment.  ECF Nos. 3, 7, 9, 11-12, 17, 18.

23             II.  FACTUAL BACKGROUND

24        Plaintiff was born on January 3, 1968, and accordingly was 39 years old on the earliest

25    alleged onset date of her disabilities, April 20, 2007.  AR 506.  Plaintiff has a high school

26    education, and can communicate in English.  AR 506.

27             III.  LEGAL STANDARDS

28        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

1   supported by substantial evidence and if the Commissioner applied the correct legal standards."

2   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

3   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

4   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

5        Substantial evidence is "more than a mere scintilla," but "may be less than a

6   preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

7   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

8   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

9   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

10  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

11  Although this court cannot substitute its discretion for that of the Commissioner, the court

12  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

13  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

14  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

15  court must consider both evidence that supports and evidence that detracts from the ALJ's

16  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

17        "The ALJ is responsible for determining credibility, resolving conflicts in medical

18  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

19  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

20  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

21  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

22  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

23  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

24  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

25  evidence that the ALJ did not discuss").

26        The court will not reverse the Commissioner's decision if it is based on harmless error,

27  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

28  ultimate nondisability determination.'"  Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

1  (quoting <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also <u>Burch v.</u>

2  <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

3                                    IV.  RELEVANT LAW

4         Disability Insurance Benefits and Supplemental Security Income are available for every

5  eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is

6  "disabled" if he is "'unable to engage in substantial gainful activity due to a medically

7  determinable physical or mental impairment . . ..'"  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987)

8  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

9         The Commissioner uses a five-step sequential evaluation process to determine whether an

10 applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

11 <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

12 process to determine disability" under Title II and Title XVI).  The following summarizes the

13 sequential evaluation:

14         Step one: Is the claimant engaging in substantial gainful activity?  If
           so, the claimant is not disabled.  If not, proceed to step two.
15
16 20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

17         Step two: Does the claimant have a "severe" impairment?  If so,
           proceed to step three.  If not, the claimant is not disabled.
18 <u>Id.</u>, §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

19         Step three: Does the claimant's impairment or combination of
           impairments meet or equal an impairment listed in 20 C.F.R., Pt.
20         404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not,
           proceed to step four.
21
22 <u>Id.</u>, §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

23         Step four: Does the claimant's residual functional capacity make
           him capable of performing his past work?  If so, the claimant is not
24         disabled.  If not, proceed to step five.

25 <u>Id.</u>, §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

26         Step five: Does the claimant have the residual functional capacity
           perform any other work?  If so, the claimant is not disabled.  If not,
27         the claimant is disabled.

28 <u>Id.</u>, §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. [Step 1] The claimant has not engaged in substantial gainful activity since April 20, 2007, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Step 2] The claimant has the following severe impairments: coronary artery disease; hypothyroidism; arthritis of the lumbar spine with sciatica; Baker's cyst and water on the left knee; migraines and headaches; bipolar disorder; post-traumatic stress disorder; depression; anxiety disorder; methamphetamine abuse in sustained remission (20 CFR 404.1520(c) and 416.920(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Preparation for Step 4]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry, push and pull, 20 pounds occasionally and 10 pounds frequently; sit for eight hours of an eight hour day with normal breaks; stand and walk for six hours of an eight hour day with normal breaks and can do no prolonged standing and walking, needing to change position no more than after 45-60 minutes; cannot walk on uneven terrain; cannot climb ladders, ropes or scaffolds; can occasionally stoop, crouch, crawl, kneel; cannot work around unprotected hazardous machinery, or at unprotected heights.  She can receive, understand, remember and carry out simple job instructions, and occasionally detailed job instructions, but not complex instructions; can occasionally interact appropriately with the public and frequently interact with co-workers and supervisors; can make simple judgments, and adjust to simple changes in the workplace.

6. [Step 4] The claimant is unable to perform any past relevant

work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on January 3,1968 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 388-413.

As noted, the ALJ concluded that "the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act," and "the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." AR 413.

## VI. ANALYSIS

Plaintiff argues that the ALJ erred in that: (1) with regard to plaintiff's alleged mental impairments, the ALJ rejected the opinions of (a) plaintiff's treating physician, Ann Murphy, M.D., (b) an examining psychologist, Sid Cormier, Ph.D., and (c) two therapists, Billy Lee Wilson Jr., LMFT, and Toni L. Childs, LMFT, but failed to articulate legitimate reasons for doing so; and (2) the ALJ found plaintiff not to be credible, but failed to articulate clear and convincing reasons for this conclusion.

### A. Steps 1 and 2

Plaintiff does not challenge the ALJ's finding that plaintiff has not engaged in substantial gainful activity, or that she has several, enumerated, severe impairments.

1     B. Step 3

2          At Step 3, the ALJ found that plaintiff has "mild restriction" in the activities of daily

3     living, citing the December 20, 2007 report of Sid Cormier, Ph.D., a Clinical Psychologist, who

4     had examined plaintiff, and her own testimony.  AR 392; see Listings ¶ 12.00(C)(1).  Dr. Cormier

5     reported that plaintiff "indicated that she is capable [of] performing all activities of daily living at

6     the present time."  AR 194.  He also states that "[o]stensibly she is fully functional outside of a

7     highly supportive situation at this time."  This conclusion is supported by substantial evidence,

8     including plaintiff's own testimony that she, among other things, swims laps every day, uses an

9     exercise bike, walks "about a mile and a half three days a week," AR 560 (2009 testimony),

10    shops, AR 563, and cares for three cats, AR 479 (2013 testimony).  Moreover, none of the

11    evidence highlighted by plaintiff contradicts this conclusion.

12         The ALJ found that plaintiff has "moderate restriction" in activities of social functioning,

13    citing Dr. Cormier's report (AR 190-94, Exh. 3F), reports from the Shasta Community Health

14    Center (AR 234-46, Exh. 10F), and her own testimony.  AR 392; see Listings ¶ 12.00(C)(2).  The

15    ALJ considered, among other things, that she socializes with friends, but also that she had crying

16    spells and was quick to anger.  This conclusion is supported by substantial evidence.

17         The ALJ found that plaintiff has "moderate difficulties" in concentration, persistence or

18    pace, citing her testimony.[3]  However, the ALJ cites plaintiff's abilities in activities relating to

19    activities of daily living – "she can pay bills, count change, handle a savings account, use a

20    checkbook or money orders . . . " – rather than activities relating to concentration persistence or

21    pace.  See AR 393.  However, it is not necessary to examine this issue closely, because the Step 3

22    conclusion would be changed only if plaintiff had "marked" restrictions or difficulties in at least

23    two of these areas.  Thus, even if plaintiff has marked difficulties in maintaining concentration,

24    persistence, or pace, the Step 3 conclusion would remain unchanged because of the "mild" and

25    "moderate" findings in the other two areas, and the lack of evidence of any repeated episodes of

26

27    ───────────────
      [3]  The ALJ also cites Exhibit 8E, which is the July 9, 2009 pre-hearing letter from plaintiff's
      counsel.  It does not address plaintiff's abilities in this area.

28

8

1    decompensation.  See Listings 12.00-12.10, ¶ B of the listed disorders.

2         C.  Residual Functional Capacity ("RFC") Assessment

3         Accordingly, the only remaining issue presented on this appeal is whether the ALJ's

4    extensive analysis of plaintiff's RFC – with special attention to his rejection of certain opinion

5    evidence and his finding that plaintiff lacks credibility – is supported by substantial evidence and

6    is free from legal error.

7              RFC is "what [one] can still do despite [one's] limitations." 20
               C.F.R. § 416.945(a)(1).  It is "based on all the relevant medical and
8              other evidence in [the] case record."  Id.  If a claimant has multiple
               impairments,   they   are   all   included   in   the   assessment.
9              § 416.920(a)(2).  The ALJ must consider a claimant's physical and
               mental abilities, § 416.920(b) and (c), as well as the total limiting
10             effects   caused   by   medically   determinable   impairments   . . .,
               § 416.920(e).   The RFC is used at step four to determine if a
11             claimant can do past relevant work and at step five to determine if a
               claimant can adjust to other work.  Id.
12

13   Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  The ALJ "is responsible for translating

14   and incorporating clinical findings into a succinct RFC."  Rounds v. Comm'r of Social Security,

15   ___ F.3d. ___, 2015 WL 4620150 at *6, 2015 U.S. App. LEXIS 13561 at [21] (9th Cir. August 4,

16   2015).  The ALJ found that plaintiff's RFC enabled her to do unskilled "light work," with certain

17   "additional limitations" discussed below in Step 5.  AR 394.  Standing alone, the RFC does

18   nothing.  Its effect is in determining whether plaintiff can perform past relevant work (Step 4),

19   and if not, whether she can perform other work (Step 5).

20        D.  Step 4

21        Using the RFC, the ALJ determined that plaintiff could not perform any past relevant

22   work.  There is no challenge to this conclusion.

23        E.  Step 5

24        Again using the RFC, the ALJ found that there were jobs in the national economy in

25   significant numbers that plaintiff could perform, because she could perform "light work."

26   AR 412.  However, he also found that she could not perform the full range of light work, and

27   therefore he did not use the Medical-Vocational Guidelines to determine whether she was

28   disabled.  AR 412.  Rather, the ALJ found that the occupational base for such work would be

1  eroded by plaintiff's "additional limitations."  Accordingly, he posed those additional limitations

2  to the vocational expert at the hearing, as follows:

> there is no limitations on the ability to receive, understand or carry
> out simple job instructions.  This individual can occasionally carry
> out, receive, remember and carry out detailed job instructions,
> however, the hypothetical individual cannot do this with complex
> job instructions.  The hypothetical person is limited to occasional
> appropriately interacting with the general public, however, the
> individual can frequently interact with co-workers and supervisors.
> This hypothetical individual is able to make simple work place
> judgments and is able to adjust to simple work place changes.

8  AR 490-91.  Using the RFC and these additional limitations, the vocational expert concluded that

9  there existed a significant number of jobs in the national economy which plaintiff could perform.

10  AR 491-92.

11       The issues on appeal, then, are whether there is substantial evidence to support the ALJ's

12  finding that plaintiff can perform a limited range of light work, and if so, whether the "additional

13  limitations" were supported by substantial evidence.  Plaintiff challenges the ALJ's rejection of

14  plaintiff's treating physician opinions, which she apparently argues would, if credited, have

15  resulted in an expanded list of "additional limitations."[4]

> As a general rule, more weight should be given to the opinion of a
> treating source than to the opinion of doctors who do not treat the
> claimant.  While the opinion of a treating physician is thus entitled
> to greater weight than that of an examining physician, the opinion
> of an examining physician is entitled to greater weight than that of a
> non-examining physician.  The weight afforded a non-examining
> physician's testimony depends "on the degree to which [he]
> provide[s] supporting explanations for [his] opinions."

21  Garrison, 759 F.3d at 1012 (internal quotations and citations omitted) (quoting Ryan v.

22  Commissioner of Social Sec., 528 F.3d 1194, 1201 (9th Cir. 2008)).

23

---

24  [4]  Nothing in plaintiff's brief indicates that she challenges the conclusion that she could do some
limited form of "light work."  The issue here is how much those jobs are limited by her mental
25  impairments.  Plaintiff also challenges the ALJ's rejection of her own testimony about the
limiting effects of her mental impairments.  Because the matter will be remanded for the improper
26  rejection of the treating physician and therapist testimony, the court will not address the alleged
rejection of plaintiff's credibility.  The court notes however, that plaintiff has not identified what
27  part of her testimony shows, if credited as true, that her mental limitations prevent her from
working.

28

1          1. <u>Ann Murphy, M.D.</u>

2          Ann Murphy, M.D., is one of plaintiff's treating physicians.  AR 405-06.  Dr. Murphy

3    concluded over the years, that plaintiff's judgment was "fair to poor," AR 714 (Exh. 26F, Nov. 5,

4    2008), 691 (Jul. 8, 2009), that she "has difficulty with short and long term memory," that she has

5    "limited" insight, judgment and concrete thinking, and that "[s]he would not be able to sustain her

6    focus for more than a few minutes at a time *and would have frequent work absences*," AR 695

7    (Exh. 26F, July 1, 2009) (emphasis added).  Dr. Murphy concluded that plaintiff would not be

8    able to obtain work because of her "chronic" mental health issues.  AR 691,[5] 695.[6]

9          Plaintiff asserts that the ALJ rejected Dr. Murphy's opinions without giving specific and

10   legitimate reasons for it.  The ALJ does not expressly state that he rejects Dr. Murphy's opinion.

11   Instead, he states that he gave them only "good weight," rather than "great weight."  AR 405.  It

12   is not clear what the ALJ meant by "good weight."  However, the ALJ did find that plaintiff "can

13   make *simple* judgments," and can "remember and carry out *simple* job instructions."  AR 394

14   (emphases added).  Thus, the ALJ arguably incorporated Dr. Murphy's finding of "judgment"

15   limitations – as modified by other medical sources who found that plaintiff had "normal"

16   judgment – and "memory" limitations.

17         However, the hypothetical to the vocational expert – and the ultimate RFC contained in

18   the ALJ's decision – contains no limitation for Dr. Murphy's findings of plaintiff's inability to

19   focus, or her likelihood of frequent work absences.  Accordingly, the court concludes that the

20   ALJ did reject Dr. Murphy's opinions as to those issues.  "To reject [the] uncontradicted opinion

21   of a treating or examining doctor, an ALJ must state clear and convincing reasons that are

22   supported by substantial evidence."  <u>Bayliss v. Barnhart</u>, 427 F.3d 2111, 1216 (9th Cir. 2005)

23   (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995)).

24         The ALJ gave two reasons for rejecting Dr. Murphy's opinions.  First, he asserts that

---

25   [5] "My assessment is that she will never be able to earn a gainful living because of her chronic
26   mental health and organic brain syndrome disease."  AR 691.

     [6] "In my opinion, patient is unable to find . . . [or] obtain gainful employment due to cog[n]itive
27   dysfunction, frequent conflicts with authority figures, multiple health problems and probable
     developmental delay."  AR 695.

28

1 | Dr. Murphy was making a determination of disability, an issue reserved to the Commissioner, and

2 | second, that Dr. Murphy's findings are all from "from a single month, July, 2009, when the

3 | claimant is in admitted exacerbation of symptoms," whereas other, and subsequent assessments

4 | showed improvement in those symptoms.  AR 405.

5 | a. Issues reserved to the Commissioner

6 | In addressing Dr. Murphy's conclusion that plaintiff would not be able to work, or that she

7 | would qualify for SSI benefits, the ALJ stated that this opinion is a "determination of disability."

8 | AR 405.  The ALJ concluded that the opinion "cannot be given weight or special significance

9 | pursuant to SSR 96-5p for to do so would confer on an outside source the authority to make this

10 | determination which it is the Commissioner's statutory responsibility to perform."  AR 405.

11 | The ALJ's statement is not quite correct.  SSR 96-5p does state that "treating source

12 | opinions on issues that are reserved to the Commissioner are never entitled to *controlling* weight

13 | or special significance."  SSR 96-5p at 2 (emphasis added).  However, the SSR goes on to explain

14 | that while such opinions, including those stating that an applicant is "disabled" or "unable to

15 | work," are not entitled to controlling weight or special significance, "[s]uch opinions on these

16 | issues *must not be disregarded*."  Id. at 5 (emphasis added).  Rather, "adjudicators must always

17 | *carefully consider* medical source opinions about any issue, including opinions about issues that

18 | are reserved to the Commissioner."  SSR 96-5p, 1996 WL 374183 at *2 (emphasis added).  It was

19 | error for the ALJ to simply and completely ignore Dr. Murphy's opinion on this issue.  Id. at 2

20 | ("opinions from any medical source *on issues reserved to the Commissioner* must never be

21 | ignored") (emphasis added).

22 | The error is compounded here, because Dr. Murphy's opinion was based upon her years

23 | of treating plaintiff, her findings that plaintiff could not focus for more than a few minutes at a

24 | time, and that she would have frequent absences from any job.  The ALJ should, at a minimum,

25 | provide valid reasons for rejecting Dr. Murphy's underlying opinion.  As discussed below, the

26 | ALJ did so on the issue of "focus," but failed to do so on the issue of "frequent work absences."

27 | b. Focus

28 | The ALJ, throughout his decision, refers to evidence that plaintiff's focus is restored with

medication.  See AR 401.  The evidence in the record, cited by the ALJ, supports this conclusion. See AR 236 (Exh. 10F, Dr. Kurosaka, Feb. 14, 2008) ("[f]eels more focused on the lamictal"), 321 (Exh. 18F, LCSW Bergerson, Mar. 16, 2009) ("[a]ble to attend and maintain focus"), 329 (Exh. 18F, Dr. Monie, Sep. 17, 2008) (family wants plaintiff back on lamictal "because she is then more focused"); 676 & 687 (Exh. 26F, Dr. Khan, Oct. 28, 2009) ("[a]ble to attend and maintain focus"); 1127 (Exh. 34F, Dr. Khan, August 3, 2009) ("[a]ble to attend and maintain focus").  Moreover, the evidence in the record – cited by the ALJ – provides "specific and legitimate" reasons for rejecting Dr. Murphy's opinion on "focus," or put another way, it clarifies the opinion to the degree that Dr. Murphy's opinion does not expressly mention the effect of medication on plaintiff's focus.  In sum, the ALJ properly rejected Dr. Murphy's opinion that plaintiff could not focus for more than a few minutes at a time.

c. Absences

At the hearing before the ALJ, the vocational expert testified that an absence rate of "less than two days per month" would be tolerated.  AR 494.  Dr. Murphy's opinion, as noted, was that plaintiff's chronic mental illnesses would cause her to have "frequent" work absences, without saying how many absences made it "frequent."  AR 695.  The ALJ acknowledges that Dr. Murphy voiced this limitation, but then makes no further reference to it.

The court finds that the ALJ rejected Dr. Murphy's opinion that plaintiff would have "frequent" work absences.  Although Dr. Murphy did not define what she meant by "frequent," the court notes that in these cases, a person's absenteeism is uniformly described – whether by the physician, the vocational expert or the ALJ – in *days per month*.[7]  Accordingly, the reasonable

---

[7]  See, e.g., Darwin v. Colvin, 2015 WL 4078233 at *18 (E.D. Cal. 2015) (Claire, M.J.) ("Indeed, the ALJ erred in finding that plaintiff has the RFC to do any work, since he is likely to miss four days of work per month, and '[m]issing two unscheduled days a month would not allow for any employment'"); McIntire v. Colvin, 2015 WL 4662411 at *3 (E.D. Cal. 2015) (Oberto, M.J.) ("Dr. Mai concluded Plaintiff's impairments could be expected to last for at least twelve months and would cause her to be absent from work about three days per month."); Grischott v. Colvin, 2015 WL 4716307 at *5 (E.D. Cal. 2015) (Snyder, M.J.) ("The ALJ then directed the VE to assume that the same hypothetical person but who were absent more than one time per month. The VE testified that such absences would preclude all work."); Cortes v. Commissioner of Social Sec., 2015 WL 4557416 at *5 (E.D. Cal. 2015) (Boone, M.J.) ("Plaintiff's impairments (continued…)

interpretation of Dr. Murphy's statement is that plaintiff would be absent "frequently" on a monthly basis, which can only mean an absence rate of two or more days per month.

The ALJ does state that he gives "good weight," but not "great weight," to Dr. Murphy's opinion *as a whole*. Further, the ALJ explains at some length his views on why Dr. Murphy's opinions, in general, should be given only "good weight." However, the ALJ does not identify any evidence, nor any medical opinion, that undermines Dr. Murphy's specific finding that plaintiff would have frequent absences. As shown below, the other treating doctors and therapists tend to support, rather than undermine, Dr. Murphy's opinion.

The ALJ accordingly erred in rejecting the treating physician's opinion on this issue, and the court will therefore credit it as true. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

_____

would cause him to be absent from work more than three times per month"); Emmons v. Commissioner of Social Sec. 2015 WL 2374322 at *2-3 (E.D. Cal. 2015) (Newman, M.J.) ("she would require more than three work absences per month to cope with the effects of pain, depression, and anxiety"); Cannon v. Colvin, 2015 WL 1932753 at *9 (E.D. Cal. 2015) (Delaney, M.J.) ("Finally, he opined that plaintiff's impairments would likely cause her to be absent from work 3 or more days per month"); Maldonado v. Colvin, 2015 WL 1729786 at *5 (E.D. Cal. 2015) (Thurston, M.J.) ("This opinion is intertwined with the testimony of the vocational expert, who testified that if a worker were to miss two days per month – which Dr. Hernandez indicated was a possibility for Plaintiff – no unskilled work would be available"); Uy v. Colvin, 2015 WL 351438 at *1 (E.D. Cal. 2015) (McCauliffe, M.J.) ("Dr. Parayno opined Plaintiff would be absent about three times per month"); Vasquez v. Colvin, 2014 WL 1285655 at *2 (E.D. Cal. 2014) (Austin, M.J.) ("The doctor also opined that Plaintiff would be unable to work continuously because of severe shortness of breath and would be absent from work more than four days per month due to breathing problems"); Henkle v. Colvin, 2014 WL 880370 at *3 (E.D. Cal. 2014) (Drozd, M.J.) ("The ALJ rejected only Dr. Pang's finding that plaintiff would be absent from work more than four times per month"); Mcdonald v. Colvin, 2013 WL 5372896 at *3 (E.D. Cal. 2013) (Brennan, M.J.) ("Dr. Knoblich also stated that plaintiff's impairments or treatment would cause her to be absent from work more than four days per month"); Krouch v. Astrue, 2012 WL 5343082 at *2 (E.D. Cal. 2012) (Beck, M.J.) ("if this person was absent 3 or more times per month due to illness, there would be no positions available"); Dougherty v. Astrue, 2012 WL 671411 at *5 (E.D. Cal. 2012) (Hollows, M.J.) ("Dr. Shingate also indicated that plaintiff would have good and bad days and that he would likely be absent from work more than four days per month"); Valdez v. Commissioner of Social Sec., 2011 WL 489694 at * 4 (E.D. Cal. 2011) (Kellison, M.J.) ("Dr. Christensen filled out a check-box lumbar residual functional capacity questionnaire wherein he opined . . . that plaintiff would be absent from work four or more days per month as a result of impairments or treatment"); Lemus v. Astrue, 2009 WL 817546 at *14 (E.D. Cal. 2009) (Goldner, M.J.) ("Dr. Ybarra . . . anticipated Plaintiff would be absent from work as result of her impairments or her need for treatment more than four days per month").

14

1  Cir. 2000), cert. denied, 531 U.S. 1038 (2000) (where "the Commissioner fails to provide

2  adequate reasons for rejecting the opinion of a treating or examining physician, we credit that

3  opinion as a matter of law").

4      2.  Examining clinical psychologist, Sidney Cormier, Ph.D.

5        Sidney Cormier, Ph.D., twice conducted comprehensive psychiatric examinations of

6  plaintiff, the first in 2007 and the second in 2011.  AR 190-94, AR 797-803.  Although the first

7  report shows plaintiff with some functional abilities, the second and most recent report shows a

8  noticeable decline in plaintiff's ability to function in the workplace.

9        Dr. Cormier first examined plaintiff on December 20, 2007.  AR 190.  Dr. Cormier's

10  functional assessment of plaintiff was that because of her "untreated bipolar disorder," she may

11  be "significantly impaired" in her ability to carry out even "simple and repetitive" tasks, to

12  "complete a normal workday or workweek without interruptions" from her mental impairments,

13  and that she may be "impair[ed]" in "her ability to perform work activities on a consistent basis."

14  AR 193.  However, Dr. Cormier did not find any significant impairment in plaintiff's ability to

15  "maintain greater attendance," to "accept[] and remember[] instructions from supervisors," to

16  "interact with coworkers or the general public," to sustain "concentration, persistence or pace," to

17  "adjust to retain changes in a typical work setting," or to perform "all activities of daily living."

18  AR 193-94.

19        By the time of Dr. Cormier's August 5, 2011 examination, plaintiff's functional abilities

20  had noticeably declined.  According to his assessment, plaintiff was "seriously" impaired in her

21  ability to perform even "simple and repetitive" tasks on a regular basis, and to "complete a

22  normal workday or workweek without interruptions" resulting from her mental impairments.

23  AR 801.  In addition, he found plaintiff "moderately to seriously" impaired in her ability to

24  "maintain regular attendance," to "perform work activities on a consistent basis," to "interact with

25  coworkers and the general public," and he found her "impaired" in her ability "to adjust to routine

26  changes in a work situation."  AR 801.  However, Dr. Cormier also found that plaintiff did not

27  require special or additional supervision, and found only mild, moderate or no significant

28  impairment in her ability to accept "and remember instructions from supervisors," to "deal with

1   typical stresses" at work, to maintain "concentration or persistence," to maintain "pace," and to

2   perform "most activities of daily living."  AR 801.[8]

3        The ALJ stated that he gave "substantial weight" to Dr. Cormier's 2007 opinion.

4   However, based upon the RFC, it appears that what the ALJ means by this is that he rejected

5   Dr. Cormier's opinion to the degree it found "significant" impairments in plaintiff's ability to

6   carry out even simple and repetitive tasks and to complete a normal workday and workweek, and

7   otherwise accepted it.  As noted above, "[t]o reject [the] uncontradicted opinion of a treating or

8   examining doctor, an ALJ must state clear and convincing reasons that are supported by

9   substantial evidence."  Bayliss, 427 F.3d at 1216.

10       The ALJ rejected the opinion on the grounds that plaintiff "is fairly consistently being

11  treated with psychiatric medications from her primary care providers, and for a period of time,

12  counseling with therapists or psychiatrist Dr. Kahn [Khan], the claimant's functional capacities

13  are greater than this doctor opined."  AR 404.  However, nothing in Dr. Khan's assessments

14  addresses the specific functional limitations identified by Dr. Cormier.  Moreover, the fact that

15  plaintiff was treated with medications does not undermine Dr. Cormier's opinion that she

16  nevertheless has the functional limitations he specified.  Moreover, the general reference to

17

18  ─────────────────
    [8]  Also, Dr. Cormier's assessment of plaintiff's Global Assessment of Functioning ("GAF")
    declined from 65 in 2007 to 53 in 2011.  Compare AR 193 with 801.

19

20              A GAF score, is a rough estimate of an individual's psychological,
            social, and occupational functioning used to reflect the individual's

21          need for treatment.  . . .  Although GAF scores, standing alone, do
            not control determinations of whether a person's mental

22          impairments rise to the level of a disability (or interact with
            physical impairments to create a disability), they may be a useful

23          measurement. . . .  GAF scores are typically assessed in controlled,
            clinical settings that may differ from work environments in

24          important respects.  See, e.g., Titles II & XVI: Capability to Do
            Other Work – The Medical-Vocational Rules As A Framework for

25          Evaluating   Solely   Nonexertional   Impairments,   SSR   85-15,
            1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A. 1985) ("The mentally

26          impaired may cease to function effectively when facing such
            demands as getting to work regularly, having their performance

27          supervised, and remaining in the workplace for a full day.").

28  Garrison, 759 F.3d at 1003 n.4 (some internal quotation marks omitted).

                                        16

1   psychiatric medications from her primary doctors does not give a clear understanding of what

2   evidence the ALJ is relying upon to find that the limitations specified by Dr. Cormier have been

3   overcome, or do not exist.  Thus, it was error for the ALJ to reject Dr. Cormier's 2007 opinions.

4          The ALJ stated that he gave "[g]ood weight" to Dr. Cormier's 2011 opinion, but not

5   "great weight."  AR 405.  Although it is not clear what the ALJ means by "good weight," it is

6   clear that he rejected the portion of the opinion that reported plaintiff as being "seriously" or

7   "moderately to seriously" impaired, and did not incorporate those limitations in his RFC.  The

8   reason given for this rejection is that the report "was a single evaluation, with no access to the

9   longitudinal record of treatment which shows the claimant quite functional if not in an episode of

10  situational stress, and complaint with a regular psychiatric medications regime."  AR 405.  He

11  also finds that the report is "inconsistent with the findings of treating psychiatrist Dr. Kahn

12  [Khan] . . .."  AR 405.

13         For the reasons discussed above in regard to Dr. Murphy, however, Dr. Khan's reports are

14  not inconsistent with the limitations identified by Dr. Cormier.  In addition, the court can find no

15  basis for the ALJ's statement that Dr. Cormier's opinion was a "single evaluation" and that he

16  had "no access to the longitudinal record of treatment."  First, plaintiff's limitations are contained

17  in two evaluations by Dr. Cormier, not just one.  Second, Dr. Cormier's 2011 report states that he

18  had available plaintiff's "history," which was "obtained from the claimant and a review of records

19  provided by your office."  AR 798.  Further, "[d]ue to some cross validation, its reliability and

20  validity may be considered fairly good."  Id.  In addition, that report makes specific reference to a

21  "Disability Report" that is undated but that appears to date from 2007 or 2008.  See AR 798,

22  123 (Exh. 2E).  The report also specifically refers to medical records from Shasta Community

23  Health Center, which include treatment as far back as 2005.  AR 798.  Dr. Cormier's 2007 report

24  makes reference to "[r]ecords provided by the Department of Social Services," which include

25  medical records going back at least as far as May 24, 2005.  AR 191.  In short, Dr. Cormier's

26  report does appear to be based upon the longitudinal record of plaintiff's treatments.  Thus, it was

27  error for the ALJ to reject Dr. Cormier's 2011 opinions.

28  ////

1
        3. <u>Treating therapist, Billy Lee Wilson Jr., LMFT</u>

2
        Billy Lee Wilson Jr. is a Licensed Marriage and Family Therapist ("LMFT"), who, by

3
July 13, 2009, had treated plaintiff sixteen (16) times, in sessions from February through July

4
2009.  AR 338.  Wilson, in summary, assessed plaintiff as having "between Major and Serious

5
Impairment in social, occupational, family and recreative activities."  AR 339.  He found that

6
plaintiff had an "inability to cope with her depression, anxiety and fear even with psychotropic

7
medication . . .."  AR 339.  Overall, he found that her "future prognosis is little or no

8
improvement in her social and/or occupational functioning."  AR 339.

9
        The ALJ rejected this opinion in its entirety, explaining that that "the treatment period is

10
short," and that the opinion "is inconsistent with the long-term record showing that with

11
appropriate medications, the claimant returns to baseline, mild conditions in her psychiatric

12
impairments."  AR 406.  The ALJ points only to "the treatment records of psychiatrist Dr. [Imran]

13
Khan," as evidence of this.  AR 406.[9]  However, Dr. Khan's treatment records do not show that

14
plaintiff returns to "mild conditions" such that she can work.[10]

15
                                  
[9]  The AR also contains records from Dr. Mohamed H. Khan, a cardiologist.  <u>See, e.g.</u>, AR 645.

16
[10]  The ALJ does not cite other evidence in rejecting Wilson's opinions, and the court can only
decide the appeal on the basis asserted by the ALJ.  <u>See</u> <u>Brown-Hunter v. Colvin</u>, ___ F.3d ___,

17
2015 WL 4620123 at *4, 2015 U.S. App. LEXIS 13560 at (9th Cir. August 4, 2015) ("we can
affirm the agency's decision to deny benefits only on the grounds invoked by the agency").  In

18
any event, it is not clear whether the other evidence mentioned elsewhere in the ALJ's opinion
(medical assessments and plaintiff's own testimony about her daily activities), is tending to

19
chronicle transitory changes in plaintiff's mood – sometimes better, sometimes worse – rather
than showing that the specific limitations identified by her treating physician and therapists have

20
been resolved.  Moreover, the ALJ's strong focus on plaintiff's ability to engage in "normal"
activities – such as riding an exercise bike, swimming, walking and visiting her boyfriend – do

21
not undermine the consistent opinions of her treating and examining doctors and therapists that
plaintiff's mental conditions imposed work-related functional limitations on her.  It is no

22
contradiction to say that plaintiff's diagnoses of bipolar disorder, post-traumatic stress and severe
depression allow her to engage in some seemingly normal activities, but still compel her to be

23
frequently absent from work, or prevent her from carrying out simple and repetitive tasks, for
example, both of which will limit the number of jobs available to her, or could eliminate them

24
altogether.  "Disability does not mean that a claimant must vegetate in a dark room excluded from
all forms of human and social activity."  <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987)

25
(internal quotation marks omitted); <u>Garrison</u>, 759 F.3d at 1016 (discussing, and collecting Ninth

26
Circuit cases addressing, the importance of not penalizing claimants "for attempting to lead
normal lives in the face of their limitations").

27

28

1    It appears that Dr. Khan first saw plaintiff on May 20, 2009.  AR 316-17.  Dr. Khan's

2    assessment of plaintiff was "Recur Mjr Depress-severe / ICD9: 296.33."  AR 316.  No other

3    assessment or details appear in the record, even though AR 316 says "see scanned note for

4    details."  AR 316.  Dr. Khan next saw plaintiff on August 3, 2009.  AR 684-88.  Dr. Khan had

5    increased plaintiff's Remeron prescription, and plaintiff reported "that her irritability and mood

6    lability" has improved.[11]  AR 686.  However, along with that increase, "she is complaining that

7    she is excessively tired during the daytime."  AR 686.  Thus, the report does not indicate that

8    plaintiff had overcome her limitations, rather, it indicates that the medication that eased some

9    symptoms also created its own limitation.  Cf. SSR 96-7p, 1996 WL 374186 at *3 (in assessing

10   symptom testimony, the ALJ must consider the "type, dosage, effectiveness, and side effects of

11   any medication the individual takes or has taken to alleviate pain or other symptoms").  Dr. Khan

12   next saw plaintiff on September 16, 2009.  AR 679-83.  Dr. Khan reported that the Remeron

13   prescription "has been helpful for her mood and sleep although she is still 'stressed out.'"

14   AR 681.  However, he decided to discontinue her Risperdal prescription because it created

15   "excessive tiredness."  AR 681.  Dr. Khan's next, and last, visit with plaintiff was on October 28,

16   2009.  AR 672-76.  On this visit, Dr. Khan found that plaintiff's depression "improved

17   significantly."  AR 676.  However, plaintiff still "feels fatigued and tired early in the morning,

18   she has difficulty with concentration and energy in the morning."  AR 674.

19   Dr. Khan's reports do not undermine LMFT Wilson's assessments regarding plaintiff's

20   limitations.  They show only that Dr. Khan experimented with various levels of medication, each

21   of which gave some improvement in symptoms, or "significant[]" improvement in one case, but

22   which were off-set by side effects that created their own limitations.  Indeed, the side effect that

23   plaintiff suffered most from her medication was excessive daytime sleepiness, which would tend

24   to confirm, rather than refute, Dr. Murphy's conclusion that plaintiff would suffer from frequent

25   work absences.

26

27   [11] "Mood lability" refers to "free and uncontrolled mood or behavioral expression of the
     emotions."  Stedman's Medical Dictionary § 474140.

28

1        4.  Treating therapist, Toni L. Childs, LMFT

2        On November 6, 2007, Toni L. Childs, LMFT, who had seen plaintiff in psychotherapy

3    since February 10, 2006 (AR 259), completed a Medical Source Statement.  AR 187.  Childs

4    rated plaintiff "fair" in her ability to maintain concentration, attention and persistence, and to

5    complete a normal workday and workweek without interruptions from psychologically based

6    symptoms.  Id.[12]

7        On April 9, 2008, Childs completed a "Mental Medical Assessment of Ability To Do

8    Work-Related Activities."  AR 248-50.  Childs reported that plaintiff was "markedly limited" in

9    her ability to relate to co-workers, deal with the public, deal with work stresses, function

10   independently, and to understand, remember and carry out complex job instructions.  AR 248-49.

11   She also reported that plaintiff was "moderately" to "markedly" limited in her ability to follow

12   work rules, use judgment, maintain attention/concentration, to understand, remember and carry

13   out detailed (but not complex) job instructions, to behave in an emotionally stable manner, relate

14   predictably in social situations and to demonstrate reliability.  Id.  Childs also found that

15   plaintiff's ability to maintain her personal appearance was "extremely limited," but that she was

16   only "slightly" to "moderately" limited in her ability to understand, remember and carry out

17   simple job instructions.  AR 249.

18       On April 20, 2008, LMFT Childs authored an opinion finding that plaintiff had been

19   "working on her issues and has made significant progress."  AR 259.  However, she also found

20   that "the areas of communication, self-care, socializing appropriately, completing tasks on time,

21   memory, concentration and follow-thru are all concerns."  Id.

22       The ALJ rejected Childs' assessments, again citing Dr. Khan, and asserting that the

23   underlying record shows that plaintiff "returns to baseline, mild conditions in her psychiatric

24   ──────────────────

25   [12]  Childs rated plaintiff "poor" in her ability to understand, remember, and carry out complex
     instructions, but the ALJ, despite rejecting this opinion, incorporated that limitation into his RFC.

26   Childs rated plaintiff "fair" in her ability to understand, remember, and carry out simple
     instructions.  "Fair" means that plaintiff is impaired but the degree of the impairment needs to be

27   further described.  As discussed below, in April 2008, Childs rated plaintiff "slightly" to
     "moderately" impaired in this area, and the ALJ incorporated this into his RFC.

28

1    impairments" when she takes her medication.[13]  For the reasons discussed above, this was error.

2    Dr. Khan's reports do not address plaintiff's limitations in these areas, and do not show a return to

3    functionality such that plaintiff can work so long as she takes her medications.

4          To the contrary, they show that for each improvement in mood caused by her medications,

5    there is a corresponding decrease in functioning apparently due to the side effects of the

6    medications.  However, even apart from the possible side effects of the medications, Dr. Khan's

7    generalized references to plaintiff's improvements in mood do not address the findings of her

8    treating physician, her examining physician, and her treating therapists about her specific

9    limitations, including, among others, her likelihood of frequent work absences, and her inability

10   to relate to co-workers, deal with the public and deal with work stresses.

11                                 VII.  REMAND

12         Where, as here, "the Commissioner fails to provide adequate reasons for rejecting the

13   opinion of a treating or examining physician, we credit that opinion as a matter of law."  Harman

14   v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).  The court

15   accordingly credits Dr. Murphy's opinion as true,[14] namely, that plaintiff would have "frequent

16   work absences," meaning two or more absences per month.  Plaintiff therefore does not satisfy

17   the job limitations testified to by the vocational expert in order to obtain a job, specifically, that

18   she must have "less than two" absences per month.

19         Since plaintiff "does not have the residual functional capacity to perform any work," she

20   "is disabled."  20 C.F.R. §§ 404.1520(a) (4)(v), 416.920(a)(4)(v).  Accordingly, "[n]o purpose

21   would be served by remanding for further proceedings."  Lester, 81 F.3d at 834.  Indeed, the

22

23   ───────────────────────

24   [13]  Also, the ALJ did not account for the limitations identified by Childs, most plainly in his RFC
     assertion that plaintiff can "frequently interact with co-workers and supervisors."  See AR 394.

25   [14]  The court further credits Dr. Cormier's 2011 opinion that plaintiff was "seriously" or
     "moderately to seriously" impaired in her ability to perform even "simple and repetitive" tasks on
26   a regular basis, "complete a normal workday or workweek without interruptions" resulting from
     her mental impairments, "maintain regular attendance," "perform work activities on a consistent
27   basis," "interact with coworkers and the general public," and that she was "impaired" in her
     ability "to adjust to routine changes in a work situation."  AR 801.

28

                                          21

Ninth Circuit instructs that this court should "remand for an immediate award of benefits" where, as here:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Accordingly, the court will remand for the immediate calculation and award of benefits.

## VIII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (labeled "Defendant's Opposition to Plaintiff's Motion for Summary Judgment") (ECF No. 18), is DENIED;

3. This matter is REMANDED to the Commissioner for the immediate calculation and award of benefits; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: September 1, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE